IN THE UNITED STATES COURT FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| 10 FRONTAGE ROAD, LLC, | ) | |
| DAN CARVER, ANN CARVER, DONALD L. CARVER II, SUE ANNE REEDY REVOCABLE LIVING TRUST, and JANET CARVER, | ) | Case No. 9:13-cv-00169-DCN |
| PAUL C. BREWER, | ) | |
| And | ) | |
| DONALD A. EDGERLEY and LINDA EDGERLEY | ) | |
| For Themselves and a Class of Similarly Situated Plaintiffs, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| THE BEAUFORT-JASPER WATER & SEWER AUTHORITY, | ) | |
| Defendant. | ) | |

## COMPLAINT

COME NOW Plaintiffs 10 Frontage Road, LLC, Dan Carver, Ann Carver, Donald L. Carver II, Sue Anne Reedy Revocable Living Trust, and Janet Carver, Paul C. Brewer, and Donald A. Edgerley and Linda Edgerley, for themselves and on behalf of a class of similarly situated landowners, pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

1. Plaintiffs seek certification of a class of landowners who own fee title in land adjoining a railroad right-of-way that runs from milepost 443.37 in Yemassee, South Carolina to milepost 468.31 at Port Royal, South Carolina.

2. The railroad, both at the time of the acquisition of the right-of-way in 1871 and the abandonment of the right-of-way in 2009, acquired an easement for their railroad purposes over and through the adjacent landowners' land that was limited to the surface of the adjacent landowners' fee ownership in their land.

3. The Beaufort-Jasper Water & Sewer Authority ("BJWSA"), by and through The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act") and a series of related transactions and contracts, has improperly and illegally invaded and clouded Plaintiffs' fee ownership in their subsurface and aerial rights associated with the right-of-way.

4. Plaintiffs seek, on behalf of themselves and the proposed class of adjacent landowners, among other things, actual and statutory damages, attorneys' fees, and costs.

## THE PARTIES

5. Plaintiff 10 Frontage Road LLC is a limited liability company and a resident of Beaufort County, South Carolina and the United States of America who owns land adjacent to the former railroad easement now "owned" by BJWSA. 10 Frontage Road LLC's property, Parcel Number R100025000015B0000, includes the fee title to all of the abandoned right-of-way that is now subject to BJWSA's easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act. (A copy of the current deed evidencing ownership of the above described property on the date of the taking is attached as Exhibit "A").

6.      Plaintiffs Dan Carver, Ann Carver, Donald L. Carver II, Sue Anne Reedy Revocable Living Trust, Sue Anne Reedy, Trustee, and Janet Carver are residents of Beaufort County, South Carolina and the United States of America who own land adjacent to the former railroad easement now "owned" by BJWSA.   Dan Carver, Ann Carver, Donald L. Carver II, Sue Anne Reedy Revocable Living Trust, Sue Anne Reedy, Trustee, and Janet Carver's property, Parcel Number R100026000162A0000, includes the fee title to all of the abandoned right-of-way that is now subject to BJWSA's easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.  (A copy of the current deed evidencing ownership of the above described property on the date of the taking is attached as Exhibit "B").

7.      Plaintiff Paul C. Brewer is a resident of Beaufort County, South Carolina and the United States of America who owns land adjacent to the former railroad easement now "owned" by BJWSA.   Paul C. Brewer's property, Parcel Numbers R10000600005540000 and R10000600000370000, includes the fee title to all that property to the centerline of the abandoned right-of-way that is now subject to BJWSA's easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.  (A copy of the current deed evidencing ownership of the above described property on the date of the taking is attached as Exhibit "C").

8.      Plaintiffs Donald A. Edgerley and Linda R. Edgerley are husband and wife.  The Edgerleys are residents of Beaufort County, South Carolina and the United States of America who own land adjacent to the former railroad easement now "owned" by BJWSA.  Donald A. Edgerley and Linda R. Edgerley's property, Parcel Number R1200060000033000, includes the fee title to all that property to the centerline of the abandoned right-of-way that is now subject to BJWSA's easement for an interim trail and possible future railroad reactivation pursuant to the

3

Trails Act. (A copy of the current deed evidencing ownership of the above described property on the date of the taking is attached as Exhibit "D").

9. BJWSA was created during the 1954 Session of the General Assembly of the State of South Carolina as a public, non-profit corporation to acquire and distribute supplies of fresh water for industrial and domestic purposes within its service area. During its 1969 Session, the General Assembly of South Carolina enlarged the functions and powers of BJWSA to include the construction of facilities that provide for the collection, treatment, and disposal of wastewater in thickly-populated areas of Beaufort County. BJSWA operates pursuant to and subject to the powers and limitations set forth in South Carolina statutes Code 1976 § 6-37-10 et. seq.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Defendant only obtained an easement for trail use over the surface of Plaintiffs' property through implementation of The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act"), and because this action presents a claim arising under the laws of the United States as well as the laws of South Carolina.

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper because (1) defendant resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district; and (3) all of the property that is the subject of this action is situated in this judicial district.

## FACTS PERTINENT TO ALL CAUSES FOR RELIEF

12. On December 21, 1857, the South Carolina General Assembly passed "An Act to Charter the Port Royal Railroad Company" in order to establish a railroad "from the waters of

Port Royal Harbor… to some point on the Savannah River." Section VI of Act No. 4375 provided that the Port Royal Railroad could acquire its right-of-way in the same manner as "an Act to authorize the formation of the Greenville and Columbia Railroad Company" established in 1845. The Act of 1845 authorizes the railroad to only obtain a surface easement for railroad purposes.

13.     The Port Royal Railroad was not initially built because of the Civil War. Following the Civil War, the State of South Carolina adopted a new Constitution in 1868. Article XII, Section III of the 1868 Constitution provided that "no right-of-way shall be appropriated to the use of any corporation until full compensation therefore shall be first made."

14.     In response to the new Constitution of 1868, the South Carolina legislature passed a specific Act in December of 1868 to specifically declare the manner by which railroad rights-of-way could and may be taken. Section VII of Act No. 43 of 1868 provides "that upon payment of the compensation thus ascertained by a jury, the right-of-way of said lands, or the use of said lands for the purposes for which the same were required, shall vest in the person or corporation who shall hold the charter of such highway, so long as the same shall be used for such highway, and no longer." This is the specific statute and is the applicable law by which the Port Royal Railroad obtained its interest in the land and constructed its railroad corridor, as it was the law and in place at the time the Port Royal Railroad was constructed and completed in 1871.

15.     Section VII of Act No. 43 of 1878 specifically states that "the fee in such lands subject to such special uses shall remain in the owner thereof, and nothing herein contained shall be construed to confer upon such person or corporation any right in, or power over, the lands so condemned, other than such as may be within the particular purpose for which such lands were condemned." Section VII specifically states that the land will be held by the railroad only so

5

long as it is used for such railroad purposes "and no longer" and that "the fee in such lands… shall remain in the owner thereof."  This language conclusively establishes that the railroad had a mere easement for railroad purposes only on the surface of the land and the underlying fee, including subsurface rights and aerial rights, remained with the owner.

16. The Port Royal Railroad changed names and ownership on several occasions over many decades.  That portion of the line from Port Royal to Yemassee ultimately became the property of the Seaboard System Railroad, Inc.  In August of 1985, Seaboard deeded its ownership interest in the entire line from Port Royal to Yemassee to the South Carolina State Ports Authority (hereinafter "SCSPA").  The deed specifically covers the right-of-way from mile post 443.37 in Yemassee to mile post 468.31 at Port Royal.

17. SCSPA owned the railroad's surface easement following transfer from the Seaboard System Railroad.  The right-of-way was then leased to the South Carolina public railways commission ("hereinafter SCPRC"), which is organizationally a part of the State of South Carolina, Division of Public Railways (hereinafter "SCDPR"), and the Beaufort Railroad Company (hereinafter "BRC"), a subsidiary of SCDPR.  BRC operated the railroad line over the railroad corridor for a time and ultimately stopped using the right-of-way for the operation of a railroad.  No railroad traffic has operated across the rail line since 2003.

18. The National Trails System Act Amendments of 1983 ("the Trails Act"), 16 U.S.C. § 1247, authorized the Surface Transportation Board ("STB"), the governmental entity responsible for regulating railroads and their common carrier obligations, to "preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails."

19. Congress enacted the Trails Act to address the national problem of a reduction in rail tracks. The Trails Act authorizes the STB to preserve railroad corridors or rights-of-way not currently in use for train service for possible future rail use by converting those rights-of-way into recreational trails. In essence, the Trails Act allows a railroad to relinquish responsibility for a rail line by transferring the corridor to an entity that will use it as a recreational trail. Although the corridor is not used as a railroad during the period of interim trail use, it remains intact for potential future use for rail service. This process is called "railbanking."

20. Pursuant to the Trails Act, before a railroad corridor may be converted into a recreational trail, the railroad must either initiate abandonment proceedings with the STB under 49 U.S.C. § 10903 or seek an exemption from the ordinary abandonment procedures under 49 U.S.C. § 10502. Under either procedure, abandonment of the rail line and right-of-way will not be approved by the STB if a qualified trail provider submits to the STB a request to use the right-of-way as a recreational trail.

21. If the trail provider submits a statement of willingness to assume financial and legal responsibility to the STB and the railroad, the STB will issue a Notice of Interim Trail Use or Abandonment (hereinafter "NITU") which preserves the STB's jurisdiction over the rail corridor while the parties negotiate an Interim Trail Use Agreement. 49 C.F.R. § 1152.29(c).

22. The NITU preserves the STB's jurisdiction over the rail corridor, allows the railroad to discontinue operations and remove track and equipment, and affords the railroad and the trail provider 180 days to negotiate a railbanking and Trails Use Agreement. During this period, the railroad will negotiate an agreement for the transfer of the corridor to the trail operator.

23. If an agreement is ultimately reached, the NITU automatically authorizes the interim trail use. If the STB takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of the railroad to reassert control of the property for restoration of rail service. If an agreement is not reached, the railroad will be allowed to abandon the line, at which time the STB's jurisdiction over the right-of-way terminates and the fee ownership in the rail corridor returns to the adjacent landowners.

24. BJWSA commissioned a survey of the railroad corridor to determine the scope and dimensions of the right-of-way over and across Plaintiffs' land but, instead of conducting and utilizing deed research or actual measurements, the surveyor utilized tax assessment maps filed with the Interstate Commerce Commission in 1917.

25. As a result of the survey, the scope and dimensions of the railroad's right-of-way are inaccurately depicted and portrayed and the railbanked portion of the corridor pursuant to the Trails Act is false such that the right-of-way "railbanked" by BJWSA before the STB does not represent the actual and true railroad easement that existed in 2009.

26. On July 16, 2008, BRC filed a Notice of Intent to Terminate Service and Request for Issuance of Notice of Interim Trail Use/Railbanking to abandon the line with the STB. The request for a NITU from the STB was filed pursuant to the Trails Act and is attached hereto as Exhibit E.

27. On May 28, 2008, before the STB even issued a NITU for the abandoned railroad corridor, BJWSA entered into a contract to purchase the abandoned easement from the SCSPA. The contract to acquire the railroad's right-of-way is attached hereto as Exhibit F. The purported contract, in pertinent part, states:

    (a) That the SCDPR and BRC "jointly sought authority from the STB for interim trail use/railbanking of railroad operations" over the right-of-way;

(b) That "the STB has issued its NITU for the stated rights-of-way, under which the jurisdiction of the STB over the property remains effective";

(c) That BJWSA "seeks to purchase, pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), all of SCSPA's rights, title and interest in all portions of the following rail corridors and all track structures approximately situated between the following mile posts: AMJ-443.37 to AMJ-468.31";

(d) That "this sale is entered into pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), and other applicable authorities";

(e) That "this Contract and any subsequent conveyance or agreement, shall be interpreted to conform to Section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d), and [BJWSA] shall assume all financial, managerial and legal responsibility and liability for use of said Property upon conveyance, and agrees to defend, indemnify to the extent allowed by law, and hold [SCSPA] harmless therefore";

(f) That BJWSA acquired "all of such right, title and interest that [SCSPA] may have in the Property"… along "with and including all rails and improvements located thereon and all rights of [SCPSA] to operate a railroad on, upon and across said Property";

(g) The purchase price paid by BJWSA was $3,000,000.00 and the Contract provided that BJWSA was "to protect and defend the title from adverse claims and to preserve the integrity of the rail corridor", and that SCPSA was to quit claim the deed without warranty or representation of title.

28.    BJWSA purportedly acquired SCPSA's right, title and interest in the railroad's easement, which was a surface easement for railroad purposes only and BJSWA acted as if, even before the NITU was issued, that they acquired the entire fee in the railroad corridor, including subsurface rights, when they merely acquired a surface easement for railroad purposes.

29.    The STB issued a NITU for the abandoned railroad corridor on May 20, 2009 pursuant to the National Trail System Act Amendments of 1983, 16 U.S.C. § 1247.  The NITU issued by the STB is attached hereto as Exhibit G.

30.    After purportedly acquiring SCSPA's right, title and interest in the railroad corridor, BJWSA entered into a Memorandum of Understanding with Beaufort County in

January of 2010. The Memorandum of Understanding is attached hereto as Exhibit H. In pertinent part, the Memorandum of Understanding provides:

(a) That BJWSA "purchased all right, title and interest in the right-of-way from SCSPA on November 6, 2009";

(b) That "BJSWA's utility requirements in the right-of-way extend only to the underground portions of the property";

(c) That Beaufort County "has submitted a major grant application for a project that will utilize the surface portion of the right-of-way";

(d) That the "beneficial use of the right-of-way will require BJWSA to grant an easement to the county and/or to Beaufort and Port Royal" for trail use on the surface of the right-of-way;

(e) That BJWSA, purportedly with authority, assigned to Beaufort County the "responsibility for surface activities within the right-of-way";

(f) That "both parties understand and agree that any Easement must comply with all Federal requirements as they relate to the right-of-way being part of the Federal Rail Bank system as such are defined in the Order";

(g) That "BJWSA will retain complete and unfettered access to the right-of-way for BJWSA's current and future uses and purposes, including the assignment of underground placement rights to other utilities"; and

(h) That "BJWSA will retain all rights to negotiate agreements with other utilities (e.g. SCE&G) for use of the right-of-way and that all revenues derived from such agreements will accrue directly to BJWSA."

31.     BJWSA, through the contract with SCSPA, acquired SCSPA's easement for railroad purposes over the surface of the right-of-way. BJWSA then, pursuant to the Memorandum of Understanding with the County, assigned the surface rights in the railroad corridor to Beaufort County and then improperly and illegally attempted to usurp the landowners' fee interests in the subsurface rights and improperly and illegally retained all rights to negotiate agreements with other utilities for the use of the right-of-way, including subsurface

10

and aerial rights, which BJWSA had no rights to, and claimed all revenues derived from any such agreements.

33. BJWSA then formally signed an Easement Agreement with Beaufort County on January 4, 2011. The Easement Agreement is attached hereto as Exhibit I. The Easement Agreement, pursuant to the Memorandum of Understanding, provides in pertinent part:

(a) That BJWSA "acquired title to certain real property known as the Port Royal Railroad corridor situated between mile posts AMJ-443.26 and AMJ-468.31 located in the County of Beaufort, State of South Carolina";

(b) That BJWSA's "rights to such property are conditioned by the provisions of The Surface Transportation Board Decision and Notice of Interim Trail Use or Abandonment dated May 19, 2009…, the National Trails System Act, 16 U.S.C. § 1247(d),… and all applicable federal regulations";

(c) That BJWSA had the authority and right to "remove all rails, railroad ties, railroad ballast on the Easement Area and provide for storage of same for a period not to exceed 6 months";

(d) That BJWSA had the authority to "place and maintain underground facilities and equipment in connection with public utility or utility type services provided by Grantor Parties in and through the easement area, and to construct, locate, lay, install, operate, use, inspect, maintain, alter, repair, replace, inspect and/or remove and have access to, from time to time, any such underground facilities and equipment";

(e) That "Grantor's Buried Infrastructure Plan will be the controlling document for underground utilization of the Easement Area"… and that Beaufort County acknowledges that the Easement will be non-exclusive, meaning that BJWSA reserves the right the utilize the Easement Area for its own purposes, whatever they might be"; and

(f) That Beaufort County acknowledged that BJWSA "will retain all rights to negotiate agreements with other utilities for use of Easement Area and that all revenues derived from such agreements will accrue directly to" BJWSA.

33. BJWSA only acquired a surface easement for railroad purposes pursuant to the Trails Act and then purportedly attempted to expand its interests on the surface to include subsurface rights that it did not obtain, then also attempted to acquire the right to utilize the

11

subsurface rights for its own utilities, a right it did not obtain, without paying compensation to the landowners, and then to sell rights that it did not obtain, for both subsurface and aerial rights, to other utilities for a profit, thereby depriving Plaintiffs of compensation for subsurface and aerial rights over their land.

## **COUNT I—CLASS ACTION**

34. Plaintiffs incorporate by reference paragraphs 1-33 as though fully set forth herein.

35. The representative Plaintiffs bring this class action on behalf of themselves and a class of persons under Rule 23(a) of the Federal Rules of Civil Procedure, and the class is initially defined as all landowners in Beaufort County who owned land in fee adjacent to the railroad's right-of-way between M.P. 443.37 in Yemassee, South Carolina to M.P. 468.31 at Port Royal, South Carolina when the STB issued its NITU on May 20, 2009.

36. The proposed class is so numerous that joinder of all members is impracticable. The proposed class will be made up of those fee landowners who owned parcels of property along the abandoned railroad right-of-way where BJWSA currently owns a surface easement and is utilizing the Plaintiffs' underlying fee for unauthorized use.

37. Prospective class members can be identified by a search of the records of the Tax Assessor and Recorder of Deeds in Beaufort County. Through such a search, the Plaintiffs have determined that the right-of-way is comprised of approximately 520 individual parcels, with over 400 individuals or entities owning fee parcels along the right-of-way.

38. The claims of all of the named Plaintiffs involve all of the same issues of law and fact as the proposed class members and are therefore common to each putative class member. The principal issue in this case is whether BJWSA, owning only a surface easement pursuant to

the Trails Act, is improperly utilizing the Plaintiffs' subsurface land for an improper purpose, including selling subsurface and air rights to other public utility companies, without obtaining consent and authorization from Plaintiffs and without payment to Plaintiffs.

39. The claims of the named Plaintiffs are typical of the claims of the proposed class. The claims of the named Plaintiffs, as well as the claims of the proposed class members, arise from the same set of facts and are premised upon the same legal theories under federal law, namely the Trails Act, and South Carolina state property law.

40. The Plaintiffs, as representative parties, will fairly and adequately protect the interests of the proposed class. The named Plaintiffs and the proposed class members possess the same interest. They have suffered the same or similar injury—deprivation of property rights. Further, they seek the same remedy—just compensation for the value of land taken by BJWSA.

41. A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

42. Further, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which could establish incompatible standards of conduct for BJWSA or adjudication of individual claims would be dispositive of the claims of other class members not parties to this lawsuit and could substantially impair or impede their ability to protect their interests.

## **COUNT II – INVERSE CONDEMNATION**

43. Plaintiffs incorporate by reference paragraphs 1-42 as though fully set forth herein.

44. BJWSA is a governmental entity formed by the South Carolina legislature, pursuant to South Carolina statutes Code 1976 §§ 6-37-30 and 6-37-50, and is a public nonprofit corporation to acquire and distribute supplies of fresh water for industrial and domestic purposes within its service area.

45. Through the operation of the Trails Act, the railroad ceased using the right-of-way for the operation of a railroad, the STB issued a NITU to preserve the railroad corridor, a Trail Use Agreement was negotiated, signed, and filed with the STB, and BJWSA acquired the right to use the railroad's surface easement while the surface easement was still railbanked pursuant to the Trails Act.

46. By and through BJWSA's contract with SCSPA on May 28, 2008 (Exhibit F), BJWSA's Memorandum of Understanding with Beaufort County in January of 2010 (Exhibit H), and BJWSA's Easement Agreement with Beaufort County on January 4, 2011 (Exhibit I), BJWSA affirmatively acquired Plaintiffs' subsurface and aerial rights in addition to Plaintiffs' surface rights.

47. BJWSA has utilized the Plaintiffs' subsurface rights in the right-of-way, including BJWSA's "Buried Infrastructure Plan," to place and maintain underground facilities and equipment and has sold Plaintiffs' aerial rights to other utilities and have kept revenues derived from such agreements.

48. BJWSA's conduct in utilizing Plaintiffs' subsurface rights for their own purposes and in selling Plaintiffs' aerial rights to other utilities amounts to a taking of Plaintiffs' fee ownership in their subsurface and aerial rights.

49. The taking of Plaintiffs' subsurface and aerial rights is for a public purpose as stated in BJWSA's Easement Agreement with Beaufort County (Exhibit I) and as authorized by Code 1976 § 6-37-50 of the South Carolina Code.

50. As a direct and proximate result of BJWSA's taking of Plaintiffs' subsurface and aerial rights, Plaintiffs are entitled to damages for the inverse condemnation of their land, compensation for the value of subsurface and aerial rights taken and sold, prejudgment interest pursuant to Code 1976 § 28-2-420, and for attorneys' fees and costs.

## COUNT III — TRESPASS

51. Plaintiffs incorporate by reference paragraphs 1-50 as though fully set forth herein.

52. BJWSA, through the operation of the Trails Acts, acquired the railroad's surface easement, which is to be used for a public purpose subject to reactivation of the railroad.

53. Upon information and belief, the Defendant has placed water and sewer pipes beneath the subsurface of Plaintiffs' property by an affirmative act.

54. Since BJWSA did not own or acquire the Plaintiffs' fee interest in the abandoned railroad corridor, BJWSA had no right or interest in Plaintiffs' subsurface fee ownership, and the placement of subsurface water and sewer pipes on Plaintiffs' land is an intentional invasion of Plaintiffs' fee ownership interest in the exclusive possession of their property.

55. BJWSA's intentional invasion of Plaintiffs' interest in the exclusive possession of their subsurface rights in their property is an intentional act of trespass.

56. BJWSA's "Buried Infrastructure Plan" represents a continuing plan to invade Plaintiffs' fee ownership of the land without authority or permission and amounts to a continuing trespass.

57. Due to BJWSA's trespass, Plaintiffs have suffered damages, including the invasion of their exclusive right to the subsurface rights of their property, and are entitled to damages for trespass and continuing trespass, and for attorneys' fees and costs.

## **COUNT IV — UNJUST ENRICHMENT**

58. Plaintiffs incorporate by reference paragraphs 1-57 as though fully set forth herein.

59. The Plaintiffs are the fee title holders of their property, including subsurface and aerial rights.

60. BJWSA only acquired a surface easement for trail use over the surface of Plaintiffs' property through implementation of the Trails Act.

61. BJWSA had the right under South Carolina law, pursuant to § 6-37-50, to lay subsurface water and sewer pipes through eminent domain, but BJWSA did not exercise its eminent domain rights and instead attempted to avoid paying Plaintiffs for the right to lay subsurface water and sewer pipes.

62. BJWSA also, after only acquiring a surface easement through the Trails Act, not only laid underground water and sewer pipes without authority and without compensation to Plaintiffs, but also acted as if they were the fee owners of the land and have negotiated and sold aerial easements without any legal authority whatsoever.

63. Upon information and belief, BJWSA, at a minimum, has illegally and with no authority whatsoever, entered into an "easement" agreement with South Carolina Electric & Gas whereby BJWSA wrongfully and illegally sold an aerial easement for electrical lines.

64. BJWSA has improperly utilized both the subsurface and aerial rights of the Plaintiffs without their consent or authorization.

65. BJWSA has received a benefit to the detriment of the Plaintiffs, namely Plaintiffs' subsurface and aerial rights, and BJWSA has realized a monetary benefit from the utilization of the subsurface and the sale of aerial rights of the Plaintiffs' property without payment to the Plaintiffs.

66. BJWSA has realized a monetary benefit by utilizing the subsurface rights of the Plaintiffs' property without paying for it and by receiving compensation from third parties for Plaintiffs aerial rights without payment to the Plaintiffs for the use of their property rights.

67. BJWSA does not own any title and does not have any permission to use the subsurface or aerial rights over Plaintiffs' land and since BJWSA has received substantial monetary compensation and benefit without any payment to the Plaintiffs, the retention of the benefit by BJWSA is unfair, unjust and inequitable.

68. Since BJWSA has realized enormous monetary benefit from the improper use of Plaintiffs' subsurface and aerial rights in their property, BJWSA has been unfairly and unjustly enriched and owes restitution to the Plaintiffs for the use, unauthorized damage, and sale by BJWSA to third parties of the Plaintiffs' subsurface and aerial rights in their property.

69. Plaintiffs are entitled to damages for the value of the subsurface and aerial rights obtained by BJWSA and for the value of all subsurface and aerial rights granted by BJWSA to South Carolina Electric & Gas or any other utility or entity.

## COUNT V — NEGLIGENT MISREPRESENTATION

70. Plaintiffs incorporate by reference paragraphs 1-69 as though fully set forth herein.

71. BJWSA made false representations to the Plaintiffs that they owned the fee in the right-of-way, including subsurface and aerial rights, instead of owning a mere surface easement subject to the reactivation of a railroad pursuant to the Trails Act.

72. BJWSA also relied on a false and misleading survey of the railroad's right-of-way and then made false representations to Plaintiffs and the STB concerning the scope and dimensions of the railroad's right-of-way and the "railbanked" portion of the railroad's corridor pursuant to the Trails Act.

73. BJWSA had a pecuniary interest in making false representations concerning fee ownership and the railbanked portion of the right-of-way because they actually entered onto Plaintiffs' land and installed subsurface pipes, based on their false representations, without paying Plaintiffs for the subsurface rights, sold subsurface and aerial rights to other utilities and entities, and falsely represented that they acquired subsurface and aerial rights and could utilize Plaintiffs' subsurface and aerial rights in the future without payment.

74. BJWSA owed a duty of care to all Plaintiffs to see and make sure that BJWSA only communicated truthful information that they did not acquire Plaintiffs' fee ownership of the right-of-way and merely acquired a surface easement subject to reactivation of a railroad pursuant to the Trails Act pursuant to an accurate survey.

75. BJWSA breached their duty of care by failing to exercise due care when making false representations to Plaintiffs concerning what property rights they actually acquired pursuant to the Trails Act and by making false representations to Plaintiffs concerning the scope and dimensions of the railbanked portion of the corridor pursuant to the Trails Act.

76. Plaintiffs justifiably relied on the false representations made by BJWSA to allow BJWSA to enter onto Plaintiffs' land and to lay subsurface pipes and to sell aerial rights due to

the totality of the circumstances including the relative positions and relations of BJWSA and Plaintiffs.

77.     Plaintiffs suffered a pecuniary loss for the value of subsurface and aerial rights and for severance damages for the width of the railbanked portion of the right-of-way as a direct and proximate result of their reliance on the false representations made by BJWSA.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request a monetary judgment in favor of Plaintiffs representing the full fair market value of the property taken by BJWSA, including actual and statutory damages, attorneys' fees, prejudgment interest, and costs incurred by Plaintiffs and the class; for certification of the class; and for such further relief as this Court may deem just and proper.

Date: January 17, 2013

By: s/ J. Rutledge Young, III
John P. Linton (Fed Bar ID 3346)
J. Rutledge Young, III (Fed Bar ID 14132)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC  29401
(843) 720-2044
jlinton@duffyandyoung.com
ryoung@duffyandyoung.com

and

Thomas S. Stewart*
Elizabeth McCulley*
BAKER STERCHI COWDEN & RICE, LLC
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com

*pro hac vice application forthcoming          *Attorneys for Plaintiffs*