STATE OF SOUTH CAROLINA ) CONTRACT TO PURCHASE AND
) INTERIM TRAIL USE/RAILBANKING
COUNTY OF CHARLESTON ) AGREEMENT

This Contract to Purchase and Interim Trail Use/Railbanking Agreement ("Contract") is entered into by and between **The South Carolina State Ports Authority, an instrumentality of the State of South Carolina created by 1942 Act No. 626 of the South Carolina General Assembly, with its principal office at 176 Concord Street, P.O. Box 22287, Charleston, South Carolina, 29413-2287, hereinafter referred to as SELLER and Beaufort-Jasper Water and Sewer Authority, an instrumentality of the State of South Carolina, with its principal office at 6 Snake Road, Okatie, South Carolina, 29909-3937, hereinafter** referred to as PURCHASER. For all purposes in this Contract, the "Effective Date" of this Contract shall be that date upon which the last Party to sign this Contract executes it.

WHEREAS in Surface Transportation Board Finance Docket No. 34943, SELLER, PURCHASER, South Carolina Division of Public Railways, and Beaufort Railroad Company, Inc. (the "Operator"), jointly sought authority from the STB for interim trail use/railbanking of railroad operations over SELLER's right-of-way described herein.

WHEREAS during this proceeding, SELLER, PURCHASER, South Carolina Division of Public Railways, and the Operator jointly initiated a request for issuance of a notice of interim trail use ("NITU") of the rights-of-way under and pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), to which request SELLER and Operator have acceded.

WHEREAS in said docket, the STB has issued its NITU for the stated rights-of-way, under which the jurisdiction of the STB over the property remains effective, SELLER, PURCHASER, South Carolina Division of Public Railways, or the Operator, to date, not having effected the abandonment of all or any portion of said rights-of-way.

WHEREAS PURCHASER seeks to purchase, pursuant to the National Trails System Act, 16 U.S.C. §1247(d), all of SELLER's right, title and interest in all portions of the following rail corridors and all track structures approximately situated between the following mileposts: AMJ-443.37 to AMJ-468.31, including, but not limited to all bridges, culverts, track materials and appurtenances, except as otherwise excluded as provided herein. See Exhibit A attached hereto and made a part hereof (said parcel of land and improvements being hereinafter called the "Property") at the price and upon the terms and conditions as set forth below.

<u>WITNESSETH</u>:

In consideration of the foregoing premises and the mutual covenants and agreements herein contained, the SELLER agrees to sell to the PURCHASER and the PURCHASER

4666564.8                    1



agrees to purchase from the SELLER as is and by quit-claim, on the terms and conditions hereinafter set forth, all of such right, title and interest that SELLER may have in the Property located in Beaufort County, and known as, the railroad corridor between the southern boundary of S.C. Highway 281 (Ribaut Road) in the Town of Port Royal near railroad milepost AMJ-467, South Carolina and Yemassee, South Carolina, more particularly described on **Exhibit A**; together with and including all rails and improvements located thereon and all rights of SELLER to operate a railroad on, upon and across said Property, but excluding any parcels contiguous with the said railroad corridor which are not themselves part of the corridor, including the parcel adjacent to the Depot building in Beaufort and adjacent to a parcel owned by the South Carolina Public Railways Division of the Department of Commerce, and those out parcels specifically described in **Exhibit A**, and further excluding all automated railroad crossing signals in place, which belong to the S.C. Public Railways.

### I. PURCHASE PRICE

The purchase price shall be Three Million Dollars ($3,000,000.00) payable as follows:

A. The sum of One Hundred Thousand Dollars ($100,000.00) (the "Earnest Money") which has been deposited by PURCHASER in escrow with Nexsen Pruet, LLC as "Escrow Agent", upon execution of this Contract by PURCHASER. Said Escrow Agent shall hold the Earnest Money under the terms of this Contract. Said Earnest Money shall apply to the purchase price at the time of Closing.

B. The balance of Two Million Nine Hundred Thousand Dollars ($2,900,000.00) (as same may be adjusted by the provisions of this Contract) shall be paid in cash, wire transfer or certified check at Closing.

### II. SPECIAL COSTS OF THE TRANSACTION

The Parties anticipate certain costs and expenses to be incurred to accomplish the conditions of sale herein, and agree to share the costs as follows:

SELLER will pay the first Two Hundred Thousand Dollars ($200,000.00) incurred for the "Costs of the Transaction" as hereafter defined.

PURCHASER will pay the next One Hundred Thousand Dollars ($100,000.00) incurred for the Costs of the Transaction, which will not reduce the purchase price, except as specifically provided for herein below.

Except as may be specifically provided for herein, further Costs of the Transaction shall be divided equally (50/50) as the costs are incurred and payment falls due, without adjustment to the purchase price. Provided, however, that each Party's responsibility for, and contribution to Costs of the Transaction shall not exceed One Million Dollars ($1,000,000.00) in the aggregate.

4666564.8
2

"Costs of the Transaction" are defined for purposes of this Contract to be those third party costs and expenses incurred prior to the Closing of the transaction, which have been approved by both SELLER and PURCHASER as being reasonably necessary to accomplish the goal of obtaining from the Surface Transportation Board a Certificate or Notice of Interim Trail Use with respect to the Property, which costs are anticipated to include attorney and other professional fees, costs incurred by the South Carolina Division of Public Railways; boundary surveys not to exceed $50,000; and PURCHASER's assistance from the Palmetto Conservation Foundation, for which bills are rendered; and any costs and expenses, including attorney fees, associated with legal proceedings to protect and defend the title from adverse claims and to preserve the integrity of the rail corridor.

The Parties shall work to cooperate in discussing and approving Costs of the Transaction prior to the same being incurred. Costs of the Transaction shall not include any costs and expenses incurred after the Closing of the Transaction.

## III. TITLE AND POSSESSION

At Closing, SELLER will convey to PURCHASER, by quit-claim deed, without warranty or representation to matters of title or otherwise, all of SELLER's right, title and interest in and to the Property, together with any and all other interests and rights of SELLER to said land, properly invoking section 8(d) of the National Trails System Act 16 U.S.C. § 1247(d), but subject to all easements, conditions, covenants, restrictions and rights-of-way which are a matter of public record and/or appear upon the ground comprising the Property.

## IV. CLOSING

The Closing shall be held as soon as practicable after, but within sixty five (65) days following, the date on which the Surface Transportation Board issues a Certificate or Notice of Interim Trail Use with respect to the Property. The Closing shall take place at a location mutually acceptable to the Parties, or by mail for the convenience of the Parties. SELLER shall be responsible for the cost of deed preparation. PURCHASER shall pay any deed recording fees, all title search or examination fees, abstract costs, and the fees for issuance of any title commitment and title policy to PURCHASER. Except as provided above, the Parties shall each be responsible for their own Closing expenses, including attorneys' fees. At the Closing, the SELLER shall deliver to PURCHASER a properly executed and recordable quit-claim deed conveying all of its right, title and interest in and to the Property to PURCHASER, subject to the matters described in this Contract; and a bill of sale conveying such interest as SELLER has, without warranties express or implied. A form of the SELLER's deed containing standard conveyance limitations of SELLER is attached as **Exhibit B**.

## V. DEFAULT

In the event PURCHASER should fail to close the sale contemplated by this Contract, except for the failure of any covenant of SELLER as set forth herein, the Earnest Money shall be paid to SELLER; and, in addition, SELLER may either (a) declare this Contract null and void and of no further force and effect, with neither PURCHASER nor SELLER to have any further liability hereunder; or (b) may seek to enforce any remedies available at law or in equity which may be available under the laws of the State of South Carolina. In the event SELLER shall fail to close the sale which is contemplated by this Contract, except for the failure of PURCHASER to perform any covenant of PURCHASER as set forth herein, and providing that PURCHASER has first paid all of its Costs of the Transaction set forth in Article II of this Contract, the Escrow Agent shall return to PURCHASER the Earnest Money deposit paid as its sole and exclusive remedy and as the measure of liquidated damages, upon which event this Contract shall be rendered null and void, and of no further force and effect, with neither PURCHASER nor SELLER to have any further liability hereunder; provided, however, that PURCHASER may seek specific performance of this Contract against SELLER, but in no event shall PURCHASER be entitled to collect money damages from SELLER. Notwithstanding the foregoing, the obligations of the Parties to pay those costs set forth in Article II of this Contract and incurred prior to default or termination, shall survive any default or termination of this Contract until discharged by payment.

## VI. REAL ESTATE BROKER

SELLER and PURCHASER represent that they have dealt with no brokers or finders in connection with this Contract. Each does hereby agree to indemnify to the extent allowed by law and hold the other harmless from and against any and all loss, costs, damage or expense by any broker, finder or other person, who shall claim to have dealt with the other in connection with this Contract.

## VII. TAXES

If SELLER is subject to real estate property taxes for the current year, then the same shall be prorated between PURCHASER and SELLER as of the date of Closing based upon the most recent tax notice(s) applicable to the Property. The Parties agree to re-prorate the taxes based upon actual tax due for the year prorated when the actual tax due is known.

## VIII. RENTS AND POSSESSION

Any rentals assumed by PURCHASER shall be prorated at closing. PURCHASER shall purchase from SELLER any security deposits or advance rental payments relative to any tenancies. Possession shall be delivered to PURCHASER subject to the rights of any tenants.

## IX. RISK OF LOSS

If the Property, or any portion thereof, is damaged by casualty, force majeure or any

cause, then SELLER shall assume such risk. In the event of any such damage, PURCHASER may elect to terminate this Contract and receive a refund of the Earnest Money or proceed to close if the Parties reach a mutually agreed upon reduction in purchase price by reason of such damage.

X. **CONDITIONS PRECEDENT**

A. From and after the date hereof, PURCHASER and its authorized representatives shall have the right to enter upon the Property, (subject to the rights of tenants in possession) to make test borings, drainage tests, surveys, engineering and architectural studies, a Phase I Environmental Site Assessment, and to conduct such other inspections and for such other purposes commensurate with ascertaining the suitability of the Property for its intended use. PURCHASER will restore any disturbance to the Property caused by its acts to the condition that existed before such entry by PURCHASER, and agrees to be fully responsible for any and all damages to the Property or personal injury or loss to any person to others incurred as a result thereof, and to defend, indemnify to the extent allowed by law, and hold SELLER harmless from any claim, suit, cost, damage or judgments, including attorneys' fees and costs. The PURCHASER will advance the costs for a survey of the Property to be commenced within ten (10) days following the Effective Date and concluded within sixty (60) days thereafter.

B. The duty of SELLER and PURCHASER to close under this Contract is subject to the approval of the final terms and conditions hereof by their respective Boards of Directors. Approval or denial of this Contract shall be submitted to the SELLER's and PURCHASER's Boards within sixty-five (65) days after the Surface Transportation Board issues a Certificate or Notice of Interim Trail Use with respect to the Property, as provided in Article IV of this Contract.

XI. **CONDITION OF PROPERTY, HAZARDOUS WASTE, OR ENVIRONMENTAL HAZARDS**

Conveyance of the Property is and will be made on an "AS IS AND WITH ALL FAULTS" basis without representations or warranties of any kind or nature, expressed, implied or otherwise, written or oral. The conditions and limitations set forth in the form of quit-claim deed (**Exhibit B**) are incorporated herein by reference.

Contingencies.

A. *Rail Banking Contingency*: The Closing of this Contract is contingent upon the Surface Transportation Board issuing a Certificate or Notice of Interim Trail Use with respect to the Property, as provided in Article IV of this Contract.

4666564.8 5

B. *Environmental Contingency*: The Closing shall be contingent upon the issuance of a clean Phase I Environmental Site Assessment. The PURCHASER will pay for the costs for the Phase I Environmental Site Assessment.

C. *Property Information Review*. Within thirty (30) days of the Effective Date, SELLER will furnish the PURCHASER with a copy of, or make available for review and copying by PURCHASER at SELLER's offices, all other material information in SELLER's files pertaining to the Property.

D. *Title Abstract*. The Closing is contingent upon the PURCHASER obtaining a current title abstract of the property owners for the properties as shown on Exhibit A. The PURCHASER will advance the costs for the title abstract, and the costs (not to exceed Thirty Thousand Dollars ($30,000)) shall be divided equally (50/50) between the Parties as the costs are incurred and payment falls due, without adjustment to the Purchase Price. Such abstract will be completed within sixty (60) days of the Effective Date.

E. *Maintenance Liability*. The SELLER and PURCHASER agree to examine what minimal maintenance may need to be accomplished on the railroad right of way of the Property. The Parties will negotiate in good faith to establish the scope and cost of the minimal maintenance to be performed. The PURCHASER will advance the agreed costs of the minimal maintenance, and the costs shall be divided equally (50/50) between the Parties as the costs are incurred and payment falls due, without adjustment to the Purchase Price.

## XII. GOVERNMENT APPROVALS

This sale is entered into pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), and other applicable authorities. In the event the Surface Transportation Board, or any other federal or state authority having jurisdiction over any part of this conveyance, shall impose additional materially adverse terms or conditions upon this conveyance, SELLER or PURCHASER may terminate this Contract without liability to the other, except that SELLER shall return any Earnest Money to PURCHASER.

## XIII. NATIONAL TRAILS SYSTEM ACT

This Contract, and any subsequent conveyance or agreement, shall be interpreted to conform to Section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d), and PURCHASER shall assume all financial, managerial and legal responsibility and liability for

use of said Property upon conveyance, and agrees to defend, indemnify to the extent allowed by law, and hold SELLER harmless therefore. It is agreed and understood that any conservation/recreation use by PURCHASER (or its assignees) shall not impair future restoration of rail service pursuant to the National Trails System Act. The conveyance is subject to the right of the State of South Carolina to restore service by the South Carolina Division of Public Railways, or its designee, on the right-of-way. Should PURCHASER assign this Contract to any other unit of government of the State of South Carolina, that unit of government shall have the right to restore rail service (pursuant to applicable law) on the Property without any payment to SELLER. However, in the event service is restored, the PURCHASER shall be reimbursed for any rail or trail-related improvements constructed by or on behalf of PURCHASER or its assigns. PURCHASER further agrees to take all steps necessary, at no expense to SELLER, to comply with any and all state and federal requirements relating to such interim use and reactivation. The fair market value of any rail or trail-related improvements shall be determined by an appraisal process acceptable to all Parties, upon the request of any Party. PURCHASER shall reconvey the Property free and clear of any encumbrances not compatible with restoration of rail service.

### XIV. MANAGEMENT, OPERATION AND MAINTENANCE OF THE PROPERTY

PURCHASER assumes full and complete responsibility for the management, operation and maintenance of the conveyed Property and under no circumstances shall SELLER be required to manage, operate or maintain the conveyed Property after the Closing of title hereunder. This Contract shall not be construed to create a joint enterprise for the operation of the Property.

### XV. LIABILITIES

A. PURCHASER

PURCHASER shall bear sole responsibility for any and all liability, cost or expense, including attorneys' fees, arising from any event relating to the Property occurring after the date of Closing or as a result of this sale, including injuries, death, or property loss or damage, including any claim or liability arising from or based on the violation of any law, ordinance, regulation, injunction, or final order or decree of bodies or tribunals having any jurisdiction or authority, which in any way affect the performance of this Contract, whether by PURCHASER or its employee agents, or subcontractors. PURCHASER shall be responsible after closing for defense of any litigation contesting the right of the Parties to enter into or effectuate this Contract under the National Trails System Act, 16 U.S.C. § 1247(d), and shall be responsible for those pre-closing costs set forth in Article II above. PURCHASER agrees to pay SELLER its out-of-pocket expenses, including reasonable attorneys' fees in the event PURCHASER does not assume the defense incurred by SELLER in connection with litigation arising out of the transfer or use of the Property covered by this Contract for interim trail use and railbanking purposes.

PURCHASER warrants to SELLER that the PURCHASER shall, at its own expense, obtain and maintain in force during the pendency of Trail Use/Railbanking hereunder, Commercial General Liability Insurance for all claims arising out of bodily injury, illness and death and from damages to or destruction of property of others, including loss or use thereof, and including liability of SELLER, with minimum limits for bodily injury and property damage of not less than Five Million ($5,000,000.00) Dollars per occurrence, with an aggregate of not less than Five Million ($5,000,000.00) Dollars. Evidence of insurance (or certificate of self-insurance) shall be provided to SELLER prior to Closing.

B. SELLER

SELLER shall bear sole responsibility for any and all liability, cost or expense, including attorneys' fees, incurred by or assessed against PURCHASER arising from any event relating to the Property occurring before the date of Closing on account of injuries death or property loss or damage.

XVI. **GENERAL PROVISIONS**

A. Time is of the essence with respect to this Contract.

B. This Contract constitutes the full and complete agreement of the Parties hereto with respect to the purchase of the Property by PURCHASER and the Interim Trail Use/Railbanking of the Property, and shall not be modified, amended or altered except by written memorandum of the Parties.

C. This Contract may be executed in any number of counterparts, each of which shall be deemed to be an original and all such counterparts taken together shall be deemed to constitute one and the same instrument. A faxed or pdf e-mail of the executed Contract shall be valid as an original.

D. This Contract will be construed in accordance with the Laws of the State of South Carolina.

E. The terms and conditions of this Contract are hereby made binding on the successors and/or assigns of the Parties hereto. Neither Party may assign its interest in this Contract without the prior written consent of the other Party. Any attempt to assign this Contract without prior written consent of the other Party (which will not be unreasonably withheld) will be of no effect and will be an event or default hereunder.

XVII. **NOTICES**

All notices and other communications hereunder shall be in writing and shall be delivered personally or shall be sent by registered mail, certified mail, or express mail service,

postage prepaid and return receipt requested, or by nationally utilized overnight delivery service, addressed to the Parties as follows:

> As to PURCHASER: Beaufort-Jasper Water & Sewer Authority
> 6 Snake Road
> Okatie, SC 29902-3937
> W. Dean Moss, Jr., General Manager
>
> Copy To: Raymond H. Williams, Esquire
> P.O. Drawer 1027
> 1105 Bay Street
> Beaufort, SC 29901
>
> As to SELLER: South Carolina State Ports Authority
> ATTENTION: Chief Financial Officer
> 176 Concord Street
> P.O. Box 22287
> Charleston, SC 29413-2287
>
> Copy To: South Carolina State Ports Authority
> ATTENTION: Chief Legal Counsel
> 176 Concord Street
> P.O. Box 22287
> Charleston, SC 29413-2287

(SIGNATURE PAGE FOLLOWS)

IN TESTIMONY whereof, witness the signatures of the Parties hereto, the dates indicated beside their signatures.

PURCHASER:

Beaufort-Jasper Water & Sewer Authority

By: _[signature]_ (SEAL)
Its: Chairman
Date: 5/28/08

SELLER:

South Carolina State Ports Authority

By: _[signature]_
Its: PRESIDENT & CEO
Date: 30 MAY 2008

# Exhibit A
## Description of rail line being conveyed and any excluded parcels

All of Grantor's right, title and interest in and to that certain tract or parcel of land situate, lying and being at that certain tract or parcel of land, right-of-way and Railroad facilities, lying and being between Yemassee and Port Royal, County of Beaufort, State of South Carolina, and being more particularly described as follows:

That portion of Grantor's Railroad right of way, varying in width, from Milepost AMJ-443.37 at Yemassee to the southern boundary of Ribaut Road, near Milepost AMJ-467 at Port Royal, Beaufort County, South Carolina; this being a portion of the property described in that certain deed of Seaboard System Railroad, Inc., to the South Carolina State Ports Authority, dated August 15, 1985, and recorded in the Office of the RMC for Beaufort County, South Carolina, in Deed Book 433 at Page 722, on October 24, 1985;

But this conveyance does not include that portion of the Grantor's Railroad right-of-way south of Ribaut Road, Beaufort and Port Royal, South Carolina; and this conveyance further excludes parcels contiguous with the said railroad corridor which are not themselves part of the corridor, including (1) the parcel adjacent to the Depot building in Beaufort and adjacent to a parcel owned by the South Carolina Public Railways Division of the Department of Commerce; (2) the parcel near Burton shown on the C&WC Track Map (redrawn 1-26-1962), Page 26, as Parcel No. 25 at U.S. Highway 17 and Road S7-20, between Mileposts AMJ-462 and 463; and (3) the parcel shown as Parcel No. 17 on the C&WC Track Map, Page 27, between Mileposts AMJ-465 and 466; together with access thereto, all as shown more particularly on separate survey plats.

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | QUIT CLAIM DEED |
| COUNTY OF BEAUFORT | ) | |

KNOW ALL MEN BY THESE PRESENTS, THAT the **SOUTH CAROLINA STATE PORTS AUTHORITY**, (hereinafter referred to as "Grantor") in the State aforesaid, for and in consideration of the sum of TEN and 00/100 ($10.00) DOLLARS, to him in hand paid at and before the sealing of these presents by **BEAUFORT-JASPER WATER AND SEWER AUTHORITY** (hereinafter referred to as "Grantee"), in the State aforesaid, the receipt and sufficiency of which is hereby acknowledged, has remised, released and forever quit-claimed, and by these presents does hereby remise, release and forever quit-claim unto the said Grantee all of its right, title and interest in and to the following described property, to wit:

<u>SEE ATTACHED EXHIBIT A FOR LEGAL DESCRIPTION</u>

<u>Grantee's Address:</u>

Beaufort-Jasper Water and Sewer Authority
6 Snake Road
Okatie, SC 29909-3937

TOGETHER with all and singular, the Rights, Members, Hereditaments and Appurtenances to the said Premises belonging, or in anywise incident or appertaining.

TO HAVE AND TO HOLD, all and singular, the said Premises before mentioned unto the said Grantee, its successors and assigns, forever.

IN WITNESS WHEREOF, the undersigned has caused these presents to be executed, under seal, on this _____ day of _____, 2008

SIGNED, SEALED AND
DELIVERED IN THE
PRESENCE OF:

SOUTH CAROLINA STATE PORTS AUTHORITY

By:_____
Its:

_____
(Signature of 1st witness)

ATTEST:_____
Its:

_____
(Signature of 2nd witness)

STATE OF SOUTH CAROLINA )
                         )   ACKNOWLEDGMENT
COUNTY OF BEAUFORT       )

The foregoing written instrument was acknowledged before me this _____ day of _____, 2008, by the **SOUTH CAROLINA STATE PORTS AUTHORITY**, by _____, its _____ and attested by _____, its _____.

_____(SEAL)
Notary Public for South Carolina
My Commission Expires: _____

(AFFIX SEAL)

## EXHIBIT A

### Description of rail line being conveyed and any excluded parcels

ALL of Grantor's right, title and interest in and to that certain tract or parcel of land, situate, lying and being at that certain tract or parcel of land, right of way and Railroad facilities, lying and being between Yemassee and Port Royal, County of Beaufort, State of South Carolina, and being more particularly described as follows:

That portion of Grantor's Railroad right of way, varying in width, from MILEPOST AMJ-443.37 at Yemassee to the southern boundary of Ribaut Road, near MILEPOST AMJ-467, at Port Royal, Beaufort County, South Carolina; this being a portion of the property described in that certain deed of Seaboard System Railroad, Inc., to the South Carolina State Ports Authority, dated August 15, 1985, and recorded in the Office of the RMC for Beaufort County, South Carolina, in Deed Book 433 at Page 722, on October 24, 1985.

But this conveyance does not include that portion of the Grantor's Railroad right-of-way south of Ribaut Road, Beaufort and Port Royal, South Carolina; and this conveyance further excludes parcels contiguous with the said railroad corridor which are not themselves part of the corridor, including the parcel adjacent to the Depot building in Beaufort and adjacent to a parcel owned by the South Carolina Public Railways Division of the Department of Commerce, the parcel shown on the C&WC Track Map (redrawn 1-26-1962), page 26, as Parcel No. 25 at U.S. Highway 17 and Road S7-20 between Mileposts AMJ-462 and 463; and the parcel shown as Parcel No. 17 on the C&WC Track Map, page 27, between Mileposts AMJ-465 and 466; together with access thereto, all as shown more particularly on separate survey plats.

STATE OF SOUTH CAROLINA           AFFIDAVIT  Date of Transfer of Title
COUNTY OF BEAUFORT              (Closing Date) _____, 2008

PERSONALLY appeared before me the undersigned, who, being duly sworn, deposes and says:

1. I have read the information on this Affidavit and I understand such information.
2. The property is being transferred by the SOUTH CAROLINA STATE PORTS AUTHORITY to BEAUFORT-JASPER WATER AND SEWER AUTHORITY.
3. Check one of the following: *The DEED is*
   (a)____ subject to the deed recording fee as a transfer for consideration paid or to be paid in money or money's worth.
   (b)____ subject to the deed recording fee as a transfer between a corporation, a partnership, or other entity and a stockholder, partner, or owner of the entity, or is a transfer to a trust or as a distribution to a trust beneficiary.
   (c)____ EXEMPT from the deed recording fee because (exemption # ____)
   Explanation if required_____.
   (If exempt, please skip items 4-6, and go to item 7 of this affidavit.)
4. Check one of the following if either item 3(a) or item 3(b) above has been checked.
   (a)__x__ The fee is computed on the consideration paid or to be paid in money or money's worth in the amount of $3,000,000.00
   (b)____ The fee is computed on the fair market value of the realty which is $_____.
   (c)____ The fee is computed on the fair market value of the realty as established for property tax purposes which is $_____.
5. Check YES___ or NO _x_ to the following: A lien or encumbrance existed on the land, tenement, or realty before the transfer and remained on the land, tenement, or realty after the transfer. If "YES", the amount of the outstanding balance of this lien or encumbrance is $_____.
6. The DEED Recording Fee is computed as follows:
   (a) $3,000,000.00 the amount listed in Item 4 above
   (b) $0 the amount listed in Item 5 above (no amount place zero)
   (c) $3,000,000.00 subtract line 6(b) from Line 6(a) and place the result.
7. As required by Code Section 12-24-70, I state that I am a responsible person who was connected with the transaction as: attorney for the Grantee.
8. I understand that a person required to furnish this affidavit who willfully furnishes a false or fraudulent affidavit is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year, or both.

                                              SOUTH CAROLINA STATE PORTS AUTHORITY

                                              By:_____
                                              Name:_____
Sworn to before me this _____               Title:_____
day of _____, 2008.                Grantee, Grantor or Legal Representative

_____
Notary Public for South Carolina
My Commission Expires: _____

(AFFIX SEAL)